Mrs. Alline E. **CORDELL**

v.

**DETECTIVE PUBLICATIONS, INC.**
**Civ. A. No. 5040.**

United States District Court
E. D. Tennessee, S. D.

Jan. 3, 1968.
Supplemental Opinion May 15, 1968.

133 U.S.App.D.C. 326, 410 F.2d 1025, 1033–1034 (1969).

**1214**

Chambliss, Hodge, Bahner & Crawford, Mitchell Crawford, Chattanooga, Tenn., for plaintiff.

Stophel, Caldwell & Heggie, Charles J. Gearhiser, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, District Judge.

This is an action for alleged wrongful invasion of privacy arising out of the publication by the defendant of a certain article entitled "House of Horror" in the March 1967 issue of the Front Page Detective magazine. The case is before the Court upon the motion of the defendant to dismiss upon the grounds that (1) the complaint fails to state a claim upon which relief can be granted and (2) that the Court lacks in personam jurisdiction of the defendant. In the alternative, the defendant moves for a more definite statement.

The basis of the defendant's contention that the complaint fails to state a claim upon which relief can be granted is defendant's argument that in Tennessee there is no cause of action for wrongful invasion of privacy. The defendant contends that the right of action has never been expressly recognized by the Tennessee courts and that such right of action should not now be recognized because it conflicts with the right of publication of matters of public interest and with the constitutional guarantee of freedom of the press.

The duty of the Court of course is to apply the law which a state court would apply if it were sitting. Not

only does the Court have a duty to follow precedent established by the state courts, but where there is no precedent the Court has a duty to anticipate the law which would be applied. The cause of action for wrongful invasion of privacy has been discussed in the cases of Langford v. Vanderbilt University (1956), 199 Tenn. 389, 287 S.W.2d 32, and Martin v. Senators, Inc. (1967), 418 S.W.2d 660. In each of these cases it was held that the plaintiff had waived any right of privacy which she or they may have had. It is true that these cases do not expressly and clearly hold that there is such a cause of action in Tennessee, but the Court is of the opinion that such recognition is implicit in their holdings. In the *Martin* case the Tennessee Supreme Court devotes some discussion to a consideration of the nature of the tort of wrongful invasion of privacy and quotes from the American Law Institute's Restatement of the Law of Torts. Dean Prosser, on the basis of the *Langford* case cites Tennessee as recognizing the cause of action for wrongful invasion of privacy. See Prosser on Torts, 3rd Ed., Section 112, pp. 831–832. The Court is accordingly of the opinion that Tennessee courts would recognize a cause of action for wrongful invasion of privacy and that the complaint in this case is not subject to dismissal because it is based upon such an alleged cause of action.

■ Defendant further complains that the complaint does not specifically set forth the language which it contends constitutes the invasion of privacy. The defendant cites in support of its contention Tennessee cases requiring that allegedly libelous language be set forth with particularity in a declaration. However, the Court is of the opinion that the libel cases are not necessarily applicable in an action for alleged wrongful invasion of privacy. Bearing in mind the liberal rules associated with federal pleading, the Court is of the opinion that the complaint must fairly be said to be sufficient in its allegations that the publication of the article constituted a wrongful invasion of the plaintiff's privacy.

■ The defendant further contends that the complaint shows that the article complained of was concerned with the death of the plaintiff's daughter and that any right of action would be personal to the daughter and would not be maintainable by this plaintiff. However, not only does the complaint allege that the plaintiff was herself the subject of improper disclosures in the article but also that she was personally injured by the references to her daughter. The Court is of the opinion that the mother of a deceased may maintain an action for alleged wrongful invasion of privacy based upon the article concerning the circumstances of the daughter's death. In our familial society it is certainly possible that certain types of publicity concerning one member of a family may constitute an invasion of the privacy of another member. Accordingly, the Court is of the opinion that the defendant's motion should be overruled insofar as it relies upon the ground of failure to state a claim upon which relief can be granted.

■ The jurisdictional objection raised by the defendant gives rise to a difficult and delicate problem, that is, the extent to which a publisher can be subject to suits based upon personal jurisdiction in various states into which commercial publications of such publisher may be sent. This particular problem has occupied the attention of the Court of Appeals for the Fifth Circuit and the Court of Appeals for the Second Circuit in recent years, and has prompted at least one law review article. A number of the cases have arisen out of articles published by national magazines and newspapers of nationwide reputation concerning various racial conflicts which had arisen in the southern states. In New York Times Co. v. Conner (C.A. 5, 1966), 365 F.2d 567, the Fifth Circuit held that Alabama had no in personam jurisdiction of the *New York Times* in an action for libel arising out of an arti-

cle or articles printed in the *Times* concerning events that took place in Alabama. The Fifth Circuit based its holding in part upon the particularly protected status which freedom of the press enjoys under the United States Constitution and held that "considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activit[ies]." The Court is of the opinion that a better approach to this problem is set forth in the opinion of the Court of Appeals for the Second Circuit in Buckley v. New York Post (C.A. 2, 1967), 373 F.2d 175. Judge Friendly in that case reasoned that the free press considerations could best be effectuated by divorcing them from problems of due process under the Fourteenth Amendment. Judge Friendly's analysis that free press can best be protected by allowing the institution of suits based upon allegedly libelous publications in states where they are published and then by applying a doctrine of *forum non conveniens* to reduce hardship upon national publishers.

The requirements of the Due Process Clause of the Fourteenth Amendment as applied in cases of substituted service based upon "minimum contact" with the forum state under the qualitative test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, ultimately boil down to a balancing of interests. It has been suggested that the factors to be considered are these: (1) the relative inconvenience of the defendant in being required to defend in the forum state, (2) the relative inconvenience to which plaintiff would be put if forced to pursue his action in the state where defendant may be found, and (3) whatever interest the forum state may have in providing a means of redress to the plaintiff. One of the problems inherent in actions arising out of national publications is the multiplicity of suits to which a national publisher may be subjected. Some states have taken a step toward solution of this problem by adoption of the so-

called single publication rule whereby a publication is deemed to take place only at the situs where the article is first published and nowhere else. Some commentators have suggested that an ultimate solution may only be provided by some sort of congressional legislation. It would appear to the Court that whatever may be the status of suits filed in other states where publication may have taken place, a suit should be maintainable in the state where the plaintiff lives and has her reputation among her friends and business associates. The Court is accordingly of the opinion that publication of the article out of which this action arises in Tennessee, which publication is neither disputed nor minimized in the record in this case, would constitute "minimum contact" purposefully established with this State so that maintenance of this suit would not offend principles of fundamental fairness. The Court is further of the opinion that Tennessee has provided for constructive service in cases of this nature by way of T.C.A. § 20–235, which authorizes constructive service based upon "any tortious act committed in this State."

The Court is therefore of the opinion that the defendant's motion to dismiss should be denied and an order should enter to that effect.

With respect to the defendant's motion for a more definite statement, the Court is of the opinion that this would be an appropriate case for granting the relief requested. The Court is accordingly of the opinion that the plaintiff should file a more definite statement with respect to the following matters:

(1) The specific matters alleged to have been disclosed which it is claimed were private matters as distinguished from matters of public information;

(2) The specific matters alleged to be false or highly fictionalized; and

(3) The specific matters alleged to be offensive or objectionable to a person of ordinary sensibilities.

An order will enter in accordance with this opinion, the order to include provi-

sion that the plaintiff will be allowed ten days within which to file the more definite statement as provided in this memorandum.

SUPPLEMENTAL MEMORANDUM

This cause of action is before the Court upon the defendant's motion for summary judgment. The plaintiff brings an action for invasion of her privacy by the publication of an article in the March 1967 issue of defendant's magazine, Front Page Detective. The subject of the article was the murder of the plaintiff's daughter and the events leading up to the capture of the suspected assailants. The defendant moves for summary judgment upon the following grounds: (1) the publication was protected by the First Amendment of the Constitution; (2) there is no relational right of privacy so that the plaintiff as the mother of the murder victim has no cause of action for invasion of privacy; and (3) the pleadings, affidavits, and exhibits refute any alleged invasion of privacy. In support of its motion the defendant has filed the affidavit of Charles J. Gearhiser, attorney for the defendant, with 51 exhibits attached, and the affidavit of Carmena Freeman with seven exhibits attached. The plaintiff has filed the affidavit of Mitchell Crawford, attorney for the plaintiff, with one exhibit, and the affidavit of the plaintiff, Alline E. Cordell, with one exhibit. The affidavits and exhibits place in the record the article sued upon together with police records and numerous newspaper accounts relating to the murder and the apprehension of the suspected assailants.

An action for invasion of privacy is a recent innovation of the common law and is generally attributed to an article written by Samuel D. Warren and Louis D. Brandeis, "The Right to Privacy," 4 Harv.L.Rev. 193 (1890). Consequently the nature of the action is not clearly defined. Prosser divides the action into four different classes: (1) intrusion (invading the plaintiff's physical solitude or seclusion), (2) Public Disclosure of Private Facts, (3) False Light in the Public Eye, and (4) Appropriation (Use of name or likeness for advertising or other business purpose). See Prosser, Torts Section 112 at 833–842 (3d ed. 1964). Since there is no allegation of physically entering plaintiff's home or other invasion of the plaintiff's solitude, the instant action is not one of intrusion. The plaintiff's action must be predicated upon "public disclosure," "false light," or "appropriation" or a combination thereof.

The elements of an action for public disclosure are: publication of private facts which are offensive and objectionable to a reasonable man of ordinary sensibilities. The action will lie even though the matter disclosed is true. The action for false light is similar, but the matters disclosed must be false. Appropriation lies when the plaintiff's name or likeness is used to advertise the defendant's product or otherwise to the defendant's commercial advantage.

A fairly well defined defense of privilege has developed to the invasion of privacy action. The publication is privileged if it gives publicity to an already public figure, and it is privileged when it publicizes news or matters of public interest. Of course, the Court must also consider the defense of freedom of the press upon which these two privileges are founded.

In determining whether or not the defendant is entitled to a judgment as a matter of law, the Court will consider each applicable theory of invasion of privacy and whether there is a material issue of fact to be determined by the jury.

Under an action for appropriation, the plaintiff has charged that the defendant's magazine article was designed for commercial exploitation, and that a fictionalized account of her daughter's murder was published solely to further the defendant's commercial interests. Appropriation, however, usually involves the use of the plaintiff's

name or photograph to advertize a particular product or service or to add luster to a corporation. See Prosser, Torts Section 122 at 840 (3d ed. 1964). But when an event, even of a public and newsworthy nature, has been fictionalized, some courts have used language of appropriation. For instance, in Hazlitt v. Fawcett Publications, Inc., 116 F. Supp. 538, 545 (D.Conn., 1953), the Court stated:

> The existence of fictionalization also lays foundation for plaintiff's claim that it was an appropriation of an episode of the plaintiff's life to the defendant's use for commercial purposes. [citations omitted] For, to the extent that the defendant indulged in fictionalization, the inference gathers strength that the dominant characteristic of the story was not genuine information but fictional readability conducive to increased circulation for the magazine. [citations omitted] Thus this count may be deemed to state an actionable claim on the theory that the published story was in essence not a vehicle of information but rather a device to facilitate commercial exploitation. [citations omitted]

The Court, however, is of the opinion that the charge that the defendant's publication was primarily to advance the defendant's commercial interests and was for commercial exploitation does not state a cause of action for appropriation or invasion of privacy. See Jenkins v. Dell Publishing Co., 251 F.2d 447, 450–451 (3rd Cir., 1957); Mahaffey v. Official Detective Stories, Inc., 210 F.Supp. 251, 253 (W.D.La., 1962). The Court is further of the opinion that a charge of fictionalization would be more properly considered under the public disclosure and false light categories of invasion of privacy.

 Turning next to an action for public disclosure, the defendant has supplied the Court with the initial missing persons report with four supplemental reports all from the files of the Chattanooga Police Department (Exhibit 2 to Gearhiser affidavit); 47 newspaper stories from The Chattanooga Times, Chattanooga Post, and Chattanooga News-Free Press concerning the crime, the capture of the suspects, and the trial (Exhibits 4–50 of Gearhiser affidavit, but only Exhibits 4–39 were published before March 1967); and two U.P.I. releases (Exhibits 6 and 7 of Freeman affidavit). Upon reading the magazine article and comparing it to the above mentioned exhibits, it is clear that the events contained in the article were substantially publicized and were a part of the public record. The Court is of the opinion that the plaintiff may not complain of public disclosure of private facts when the material facts in the article are not private but are matters of public record and are in the public domain. See Johnson v. Evening Star Newspaper Co., 120 U.S.App.D.C. 122, 344 F.2d 507 (1965); Shorter v. Retail Credit Co., 251 F.Supp. 329 (D.S.C., 1966).

Concerning the theory of false light in the public eye, the plaintiff in her more definite statement sets forth 59 selections from the magazine article, which she alleges are false or highly fictionalized. Of the 59 selections there are 27 statements which she alleges are offensive or objectionable to a person of ordinary sensibilities. Upon reading the statements and the documents and newspaper accounts, the Court is of the opinion that the article on the whole is consistent with the published newspaper accounts, with the additions or embellishments not being of a significant or material nature.

 It appears that the greater portion of the matters found objectionable unto the plaintiff relate to alleged statements by her daughter of a new romantic interest in her life. Not only are the statements of an innocent and typically adolescent nature, but they make no public disclosure of private matters personal to the plaintiff. In this regard it should be recalled that an action for invading the right to privacy is personal, and the plaintiff cannot bring an action for statements referring only to her daughter. See Maritote v. Desilu Productions, Inc., 345 F.2d 418 (7th

Cir., 1965) (action brought by administratrix of the Estate of Alphonse (Al) Capone, his widow, and son); Mahaffey v. Official Detective Stories, Inc., *supra* (action brought by parents of deceased). Ten of the selections from the article (29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43) refer to a relative, but only from reading other accounts would one know that it referred to the plaintiff. Another selection consisted of the following:

> (8) "The Cordells did not own a television set and it was almost time to view the morning serial on the Recors' TV."

The plaintiff, Mrs. Cordell, alleges that the statement is false because: "We owned a television set but it was broken." (Plaintiff's answers to Interrogatories p. 2). Two of the statements refer to the plaintiff as mother of the victim:

> (2) "As she assured her mother the next morning and her girlfriends during the day, the evening had been a turning point in her life."

> (28) "She still was sitting there, waiting, at 11:45 when her mother glanced out of the window before going upstairs to bed."

Bearing in mind the personal nature of the action, the Court is of the opinion that neither of these selections nor anything else in the article could reasonably be interpreted as casting the plaintiff, Mrs. Cordell, in public disrepute, nor could they reasonably be offensive or objectionable to a person of ordinary sensibilities as they reflect upon Mrs. Cordell.

Finally, concerning the defenses available to a right of privacy action, the defendant contends that its article falls within the protection of the First Amendment of the Constitution. In Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), the Supreme Court held that the New York "Right of Privacy" Statute was precluded from being applied by the constitutional protection of freedom of speech and press in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth. In that case *Life* magazine falsely reported that a new play depicting a family's experience when they were held hostage and terrorized by escaped convicts re-enacted the experience of the plaintiffs. It was true that the family had been held hostage, but they had not been terrorized. Applying New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court stated:

> " * * * We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to nondefamatory matter. Even negligence would be a most elusive standard, especially when the content of the speech itself affords no warning of prospective harm to another through falsity. A negligence test would place on the press the intolerable burden of guessing how a jury might assess the reasonableness of steps taken by it to verify the accuracy of every reference to a name, picture or portrait.

> "In this context, sanctions against either innocent or negligent misstatement would present a grave hazard of discouraging the press from exercising the constitutional guarantees. Those guarantees are not for the benefit of the press so much as for the benefit of all of us. A broadly defined freedom of the press assures the maintenance of our political system and an open society. Fear of large verdicts in damage suits for innocent or merely negligent misstatement, even fear of the expense involved in their defense, must inevitably cause publishers to 'steer * * * wider of the unlawful zone,' [citations omitted].

> "But the constitutional guarantees can tolerate sanctions against *calculated* falsehood without significant impair-

ment of their essential function. * * * " Time v. Hill, 385 U.S. at 389, 87 S.Ct. at 542 (emphasis in original).

■ The plaintiff alleges that the defendant willfully and maliciously invaded the plaintiff's right of privacy in that it published the said article with full knowledge of the false and fictionalized nature of the article or it published it with reckless disregard of the plaintiff's rights in failing to make a proper investigation of the truth. In the affidavit of Carmena Freeman, Editor of the defendant publication, she states that the author of the article had contributed over 100 articles since 1961 and that this is the only complaint that the magazine has received. She further states that when a contributor submits an article he is also required to submit newspaper accounts to verify the accuracy of his story. She states that the author of the challenged article in fact submitted six newspaper stories or public records, which she compared with the article, together with two U.P.I. releases. (Exhibits of 1–7 Freeman affidavit) These supporting documents establishing prior public disclosure of the essential facts in the article sued upon are placed in the record. The First Amendment protection extends to publication of newsworthy matter or matters of public concern. Although what is of public concern is not as yet a clearly defined field of the law, it has been held that even in borderline cases the benefit of doubt should be cast in favor of protecting the publication. Cf. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) (defamation action brought by supervisor of county ski recreation area precluded by First Amendment); 33 Tenn.L.Rev. 554 (1966). In some circumstances even an innocent victim may lose his right to privacy (See Johnson v. Evening Star Newspaper Co., *supra*) and even an innocent bystander may be precluded from asserting an action for invasion of privacy. See Jacova v. Southern Radio & Television Co., 83 So.2d 34 (Fla.). It is the opinion of the Court that the af-

fidavit of Carmena Freeman establishes that the article was of matters in the public domain and was not published with knowledge of its falsity or with reckless disregard of its truth or falsity. It is therefore protected by the First Amendment of the Constitution.

■ Under the undisputed evidence in this case, the Court is of the opinion that the murder of the plaintiff's daughter was clearly a matter of public concern and public interest. Accepting as false all those portions of the article asserted by the plaintiff to be false, even when so read, the article does not cast the plaintiff in a false light nor does it reflect upon her in a manner that could be said to be offensive or objectionable to a reasonable person of ordinary sensibilities. The Court is of the opinion that the plaintiff may not recover in an action for invasion of her privacy where that action purports to be based upon a reasonably factual magazine article that only incidentally and briefly refers to the plaintiff in the course of recounting the story of the murder of the plaintiff's daughter, a matter of undisputed public interest, where the article is free of material and calculated falsehood and where in its reference to the plaintiff it could not reasonably be interpreted as being offensive or objectionable to a person of ordinary sensibilities. See Maritote v. Desilu Productions, *supra*; Mahaffey v. Official Detective Stories, Inc., *supra*; Jenkins v. Dell Publishing Co., 143 F.Supp. 952 (W.D.Pa., 1956), aff'd 251 F.2d 447 (3rd Cir., 1958), cert. denied 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958); Waters v. Fleetwood, 212 Ga. 161, 91 S.E.2d 344; Bremmer v. Journal-Tribune Publishing Co., 247 Iowa 817, 76 N.W.2d 762. The Court is accordingly of the opinion that upon the pleadings in this case, the answers to interrogatories, and the affidavits, it appears that there is no genuine issue as to any material fact to be decided by a jury and that the defendant is entitled to a judgment in its favor as a matter of law.

An order will enter accordingly.