Stella Irene **BEARD**

v.

**AKZONA, INCORPORATED.**

**Civ. No. 3–80–575.**

United States District Court, E. D. Tennessee, N. D.

May 26, 1981.

Philip P. Durand, Knoxville, Tenn., for plaintiff.

Donald B. Oakley, Morristown, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

In this tort action, plaintiff Stella Irene Beard has sued her former employer for damages allegedly sustained when she was terminated for dating a fellow employee. She claims that the defendant Akzona, Inc. invaded her privacy and violated Title III of the Onmibus Crime Control Act of 1968, 18 U.S.C. §§ 2510 et seq.[1] Following a trial on the merits on April 23, 1980, the jury returned a verdict awarding plaintiff $80,-000.00, on which judgment was duly entered. Defendant has timely filed motions for judgment notwithstanding the verdict or in the alternative for a new trial and for a remittitur. Fed.R.Civ.P. 50, 59.

Following a careful review of the proof presented at trial, the Court has concluded that there is insufficient evidence to support the jury's verdict and that defendant's motion for judgment notwithstanding the verdict must be granted. We further conclude that in view of the unfortunate misunderstanding of the jury in reaching its verdict, we must conditionally grant defendant's motion for a new trial. Fed.R. Civ.P. 50(c)(1).

## I. Evidence Presented.

A brief review of the evidence presented at trial will be helpful to an understanding of our analysis. Most of the material facts are not in substantial dispute. Where a conflict exists, we have taken pains to view the evidence in the light most favorable to the plaintiff. O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir. 1975).

Plaintiff Stella Beard (Stella), her then husband William A. Beard (William), and one Roelof Bosma were all employees of Defendant Akzona, Inc., in September, 1980. The Beards had filed for a divorce at the time but were still living under the same roof with their two teenage children. It is undisputed that they had not lived together as husband and wife since the previous January.

Stella worked as a secretary to the plant superintendent, Mr. Givens; William worked in the maintenance department; and Bosma was an engineer with a promising future. Sometime around July, William began to suspect that Stella and Bosma were having an affair. He discussed his suspicions with his supervisor Kenneth Holt, who in turn reported to his supervisor only after William had threatened violence. Although William Beard did not testify at trial, there was evidence that he followed Stella in an effort to gain more information about her relationship with Bosma. On one occasion, he got Holt out of bed to accompany him to witness a rendezvous between the two.

In mid-September, William got in touch with Thomas Benning, site manager and chief operating officer at the plant, and informed him over the phone of his suspicions. Benning called a meeting with Mr. Swann, Bosma's immediate supervisor, and Messrs. Davis and Avery, personnel officers at the plant, and they decided that Benning should confront Bosma with the story. Bosma denied dating Stella, and nothing

---

1. Plaintiff's defamation claim and claim for punitive damages were not submitted to the jury.

more was done until William called Benning again on September 23. Benning returned William's call the next day, and was informed that William had definite proof of Bosma's involvement with Stella. William told Benning at that time that he had tapped his own phone and had the recordings if Benning wanted to hear them. Benning declined to listen to them then, but called back on September 29 and asked William to bring them. He listened to the tapes in his office along with William and Swann. Swann recognized Stella's voice, and both Benning and Swann recognized Bosma's. There is some evidence that Benning discussed the situation with Dr. Coley, the president of Akzona, and with Davis, Avery, and Givens. All of these people were management personnel within the defendant company, and each had some job-related connection with the Beards or Bosma. There was no evidence that the information contained in the tapes was ever publicized to anyone other than management personnel.[2]

Both Bosma and Stella were terminated on October 1, 1980. Defendant does not deny that they were terminated because of their affair, nor does it deny that the information contained on the tapes was a substantial factor behind the termination.[3]

Finally, it must be emphasized that there was no evidence presented tending to show that the defendant or any of its employees, except for William, had anything whatsoever to do with instigating or initiating the interception of any telephone conversations. And the only evidence tending to show the defendant's knowledge of the source of the tapes was Benning's testimony that William had told him he had tapped his own home phone.

## II. *Plaintiff's Claims.*

Plaintiff maintains that the jury's verdict is supportable on either of two theories: (1) Invasion of privacy, and (2) violation of 18

U.S.C. § 2511, giving rise to civil liability under 18 U.S.C. § 2520. For the following reasons, we are constrained to disagree on both counts.

### a) *Invasion of Privacy.*

Plaintiff claims that she is entitled to recovery of the jury's verdict on the basis of the defendant corporation's invasion of her privacy. There is no doubt that the tort of invasion of privacy has been recognized by the Tennessee Courts. *Martin v. Senators, Inc.,* 220 Tenn. 465, 418 S.W.2d 660, 662–63 (1967); *Langford v. Vanderbilt University,* 199 Tenn. 389, 287 S.W.2d 32 (1956). *See also, Cordell v. Detective Publications, Inc.,* 307 F.Supp. 1212, 1217 (E.D.Tenn.1968).

■ There are four distinct kinds of invasion of privacy generally recognized in the cases. *Cordell, supra* ; Prosser, Torts, § 117 (4th ed. 1971). They are: (1) Intrusion (invading the plaintiff's physical solitude or seclusion), (2) Public Disclosure of Private Facts, (3) False Light, and (4) Appropriation for Commercial Purpose. *Cordell, supra* ; Prosser, *supra.* Of these, only the first two are arguably applicable to the case at bar. They will be considered separately.

### (1) *Intrusion.*

■ Having been cited to no Tennessee cases explicitly defining this aspect of invasion of privacy, we defer to the statement of the law contained in Restatement Second of Torts, § 652B. *See, Martin v. Senators, Inc., supra* 418 S.W.2d at 663. That section provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

The tort "consists solely of an intentional interference with [the plaintiff's] interest in

---

**2.** Kenneth Holt testified that he may have told his wife of William's problems, but there is no evidence that he gained his information from anyone other than William himself.

**3.** There was evidence that Stella had been late to work several times in the last months of her employment. She had been counseled with concerning the problem, and there was no evidence that the tardiness alone was leading to her termination.

solitude or seclusion . . . . " Rest.2d, Torts, § 652B, comment (a). This "intrusion" type of claim represents the purest form of invasion of privacy. Clearly the crux of plaintiff's claim must be that the defendant— here, the corporation—intentionally invaded her solitude or seclusion. *Cordell, supra*, at 1217; *Birnbaum v. U. S.*, 436 F.Supp. 967, 977 (D.C.N.Y.1977). Whether the information gained by reason of the intrusion was ever publicized is irrelevant to this form of invasion of privacy. *Id.*; Rest.2d, Torts, § 652B, comment (a).

■ Assuming that a wiretap on the plaintiff's telephone constitutes a sufficient intrusion to give rise to liability (Rest.2d Torts § 652B, comment (b); Prosser, *supra* at 807) there is no proof in the record that the defendant Akzona, Inc., had anything whatsoever to do with the actual interception of any of plaintiff's conversations with Bosma.[4] In fact, plaintiff alleges in her complaint that it was her husband and not the defendant who placed the wiretap on her telephone. (Complaint, ¶ III). There was no evidence that he did so in his capacity as an agent or employee of the defendant.

Plaintiff maintains that Benning's September 29 phone call to William to tell him to bring the tapes was itself an act of intrusion sufficient to give rise to the defendant's liability. We cannot agree. Benning's call was in response to several prior calls from William informing Benning of the existence of the tapes and of their contents. His call to William in no way constituted an intentional intrusion into the solitude or seclusion of Stella; nor, for that matter, did his mere act of listening to taped conversations obtained wholly independently by a third party.

The record is devoid of any proof that the defendant in this case, Akzona, Inc., at any time *itself* intentionally intruded upon plaintiff's solitude or seclusion, or that it

ordered or authorized any such intrusion by any employee or agent acting in that capacity. Plaintiff's claim of intrusion cannot, therefore, support the jury's verdict.

### b) *Publicity Given to Private Facts.*

■ At trial, plaintiff also relied on the type of invasion of privacy involving undue publicity of purely private matters. Again, we turn to the Restatement 2d of Torts for guidance. Section 652D provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

We assume that the private facts surrounding plaintiff's relations with a fellow employee were both highly offensive and not a legitimate concern to the general public. The question is whether the evidence shows the kind and extent of publicity that can give rise to liability.

■ The interest protected by the tort is the plaintiff's right to be free from unwanted *publicity*. *See*, Prosser, *supra*, at 810. Thus essential to recovery is a showing of a *public disclosure* of private facts. Communication to a single individual or to a small group of people, absent breach of contract, trust, or other confidential relationship, will not give rise to liability. Prosser, *supra*, at 810.

Comment (a) to Section 652D of the Restatement draws the distinction clearly and succinctly.

> The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity" as it is used in this Section, differs from "publication" as that term is used in § 577 in connection with liability for defamation. "Publication" in that sense, is a word of art,

---

4. In her response to defendant's motion for judgment n. o. v., plaintiff states that she relies exclusively on the intrusion type of invasion of privacy, and indicates that she does not deem very important evidence that Benning disclosed the information to others. (Pl's br. at 9) It is interesting to note, however, that her statutory claim under Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510 *et seq.*, is based on the defendant's *use* or *disclosure* of the contents of the tapes rather than on any involvement in procuring the interception of the phone conversations.

which includes any communication by the defendant to a third person. "Publicity", on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. . . .

*See also, Tureen v. Equifax, Inc.*, 571 F.2d 411 (8th Cir. 1978).

■ With all conflicts resolved in plaintiff's favor, the evidence shows that, at most, Benning disclosed the information contained in the tapes to only five individuals; Swann, Avery, Davis, Givens and Coley. As state above, all of these people were management employees of the defendant corporation, and all had some job-related connection to at least one of the parties involved. We hold that plaintiff has not shown the extent of publicity necessary to give rise to liability for invasion of her privacy.

### (2) *Title III of the Omnibus Crime Control Act of 1968.*

Plaintiff also relies on the provision of Title III of the Omnibus Crime Control Act of 1968 (the Act), 18 U.S.C. §§ 2511(1)(c) and (d), making willful use or disclosure of the contents of an unlawfully intercepted communication a criminal offense, and 18 U.S.C. § 2520, giving rise to civil liability for violations.

■ In order to recover civil damages under § 2520,[5] plaintiff must first prove that the defendant violated § 2511. *Smith v. Cincinnati Post Times-Star*, 475 F.2d 740, 25 A.L.R.Fed. 755 (6th Cir. 1973). Section 2511(1)(c) and (d) provide, in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person—who

\*　　\*　　\*　　\*　　·\*　　\*

(c) *willfully* discloses, or endeavors to disclose, to any other person . . . or

(d) *willfully* uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; shall be fined . . . or imprisoned . . . or both. [Emphasis added.]

It is clear from the face of the statute that civil liability requires proof of *willful* use or disclosure of the contents of the communication in question. Since liability in this case is based on violation of a criminal statute, the word "willfully" must be defined in the context of criminal law. *U. S. v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933). In that sense, "willful" means more than merely intentional or voluntary. A "willful" act is

"an act done with bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. The word is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act." *U. S. v. Murdock, supra*, at 394–95, 54 S.Ct. at 225. [Citations omitted.]

Regardless of what may be said about William's conduct, there is simply no evidence in the record that the defendant Ak-

**5.** 18 U.S.C. § 2520 provides, in pertinent part.

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

zona, Inc. acted with bad purpose or stubbornly, obstinately or perversely. If anyone violated plaintiff's rights, it was William Beard and not the defendant. When Benning listened to the tapes, all he knew was that they had been recorded when William tapped *his own* home telephone. There is substantial disagreement among the circuit courts of appeals as to whether the tapping of one's own phone is even a violation of the law. *Compare Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir. 1977) *with United States v. Jones*, 542 F.2d 661 (6th Cir. 1976). *See also Kratz v. Kratz*, 477 F.Supp. 463 (E.D. Pa.1979). Certainly the defendant cannot be charged with a purpose to violate a law of such questionable application to the circumstances with which it was confronted. Nor is there any evidence that the defendant or its agents acted with vengeance or malice, or with any intent other than to protect the integrity of the employment environment for which it was responsible.

■ Accordingly, we hold that the evidence does not support a finding that the defendant's use of the contents of the intercepted communications was willful as required by the statute.

*Conclusion*

The Court has spent more than the usual amount of time on this case. After listening carefully to the testimony and reviewing the record, it is strongly of the opinion that Akzona, Incorporated did not do anything or say anything to violate the rights of plaintiff. At the instance of her husband, who was not acting as an agent or representative of the Company, it examined tapes and discussed their contents with approximately five managerial employees, all of whom had a job-related connection with the involved parties. The Court is of the opinion that there is neither a factual nor legal basis to hold the Company liable.

6. During the trial, the Court granted the defendant's motion for a directed verdict on the issue of punitive damages. Nevertheless, the jury initially returned with a verdict of $5,000.00 compensatory damages and $75,-

For the reasons stated, it is ORDERED that the defendant's motion for judgment notwithstanding the verdict be, and the same hereby is, granted.

■ As stated above, we are of the opinion that the jury's unfortunate misunderstanding [6] of the damages aspect of the jury charge indicates serious confusion and, therefore, casts grave doubt on the reliability of their findings in general. Accordingly, we conditionally GRANT the defendant's alternative motion for a new trial. *See* Fed.R.Civ.P. 50(c)(1).

Order Accordingly.

000.00 punitive damages. They were sent back to the jury room for further deliberations and returned only ten minutes later with a verdict of $80,000.00 compensatory damages.