917 F.2d 1305
 18 Media L. Rep. 1429
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tammy L. PUCKETT, Plaintiff-Appellant,
v.
AMERICAN BROADCASTING COMPANIES, INC.; Nationwide
Communications, Inc., Defendants-Appellees.
 No. 89-6589.
 United States Court of Appeals, Sixth Circuit.
 Nov. 6, 1990.
 
 Before BOYCE F. MARTIN, Jr., RYAN and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Tammy Puckett appeals from the district court's grant of summary judgment in favor of defendants American Broadcasting Companies, Inc. ("ABC") and Nationwide Communications, Inc., ("Nationwide") on her state law claims for defamation, public disclosure of private life, false light publication and appropriation of likeness. Plaintiff's allegations arise out of a televised news segment by the defendants regarding the illegal activities of several persons associated with a strip bar called the Continental Club, which included shots of Puckett nude dancing in the background. For the reasons stated below, we affirm the grant of summary judgment in favor of the defendants.
 
 
 2
 Plaintiff was a nude female dancer at the Continental Club, in Knox County, Tennessee. ABC's news magazine program "20/20", in a segment entitled "Gun for Hire", televised a story regarding the former manager of the Continental Club and his associates, each of whom had been convicted of various crimes in connection with a contract murder ring. During the telecast, a Knox County detective, Mr. Lett, stated that the Continental Club "was just a sleazy bar situated on an old county highway ... and a place where you could get about anything you wanted ... drugs, sex and in [sic] some cases, contract murders." From the word "highway" to the word "sex" the tape showed plaintiff dancing at the Continental Club. The tape also showed an artist's sketch of a nude dancer alleged to be the plaintiff and, at another point, showed a full-face frontal close-up of plaintiff as she walked from the stage. Plaintiff was never mentioned by name in the telecast. Plaintiff admitted that drugs, prostitutes, and contracts for murder were obtainable at the Continental Club. Although plaintiff denied that she engaged in sexual relations with customers for money, she admitted that she performed naked "lap dancing" at the Club as part of her job (i.e., dancing naked while sitting on a customer's lap during which she voluntarily touched the customer and allowed the customer to touch her).
 
 I.
 
 3
 In considering a motion for summary judgment under Federal Rule of Civil Procedure 56, the court's inquiry is whether the non-moving party has presented any material facts establishing the causes of action as alleged. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (quoting First Nat. Bank v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)). A grant of summary judgment is reviewed de novo by this Court. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 A. Defamation
 
 4
 Plaintiff admits that the 20/20 segment was essentially true as to both the men targeted by 20/20 and the Continental Club in general. More importantly, plaintiff admits that the segment never stated that she engaged in the specific illegal activities. Plaintiff does argue, however, that the segment depicted her as "a person of lows morals, and associate of murderers and assassins and, by innuendo, a prostitute."
 
 
 5
 In Tennessee, the issue of whether a statement is capable of a defamatory meaning is a question of law to be decided by the court. Memphis Pub. Co. v. Nichols, 569 S.W.2d 412, 419 (Tenn.1978). Detective Lett's statement that "sex" could be bought was in response to a direct question concerning the Continental Club. Therefore, this statement related only to the Continental Club, generally, and not to plaintiff, specifically. There is no reasonable implication in this or any other statement in the segment that Tammy Puckett was a prostitute, just as there was no implication that she was a murderer or a drug dealer. Viewing the evidence in the light most favorable to plaintiff's case, the 20/20 segment portrayed plaintiff as a person working in a place in which sex could be bought, contract murderers could be found, and drugs could be bought or sold. Since truth is an absolute defense to an action for defamation in Tennessee, Stones River Motors, Inc. v. Mid-South Pub. Co., 651 S.W.2d 713, 719 (Tenn.App.1983), and plaintiff has admitted that the portrayal of the Continental Club was true, her defamation claim fails as a matter of law.
 
 B. Public Disclosure of Private Life
 
 6
 Plaintiff alleges that defendants are liable for damage to her reputation since, as a result of the 20/20 segment, classmates at her college discovered she was a nude dancer at the Continental Club. However, "there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye.... Nor is his privacy invaded when the defendant gives publicity to a business or activity in which the plaintiff is engaged in dealing with the public." Restatement (Second) of Torts, Sec. 652D comment b (1977); see Beard v. Akzona, Inc., 517 F.Supp. 128 (E.D.Tenn.1981); International Union v. Garner, 601 F.Supp. 187 (M.D.Tenn.1985). It is undisputed that any male could gain admittance at the Club, provided he was the proper age and paid a $5.00 admission fee. Females could gain admittance with a male escort. It is clear, therefore, that plaintiff's activities at the club were open to the public. Accordingly, her claim for public disclosure of private life was properly dismissed by the district court as a matter of law.
 
 C. False Light
 
 7
 Restatement (Second) of Torts, Sec. 652E provides that:
 
 
 8
 One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
 
 
 9
 (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 
 
 10
 (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
 
 
 11
 See Cordell v. Detective Publications, Inc., 307 F.Supp. 1212 (E.D.Tenn.1968), aff'd, 419 F.2d 989 (6th Cir.1969). "Under the theory [false light] a cause of action is made out when the plaintiff or aspects of his life have been presented in a misleading manner that would be highly offensive to a reasonable and prudent person." Garner, 601 F.Supp. at 190 (emphasis added).
 
 
 12
 Plaintiff argues that summary judgment is inappropriate on this claim since a jury could find that the 20/20 segment depicted her in a "misleading" manner. However, the segment depicted plaintiff doing only that which she customarily did to earn a living and, even then it showed only a portion of those activities. There was no implication that plaintiff was a participant in any contract murders or an associate of the men convicted of such crimes. Plaintiff was depicted as a nude female dancer in a seedy and crime-infested bar. After a careful review of the record, there is no question as to the truth of this depiction.
 
 D. Appropriation of Likeness
 
 13
 Plaintiff alleges that defendants have appropriated her likeness for a profit generating "commercial" purpose, i.e., setting the story against a background of sex in order to increase viewership. Generally, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts, Sec. 652C (1977); see Martin v. Senators, Inc., 220 Tenn. 465, 418 S.W.2d 660 (1967). However, not every person who incidentally appears in a television broadcast, whether on the evening news or in a more sensationalist forum, may maintain an action for appropriation of likeness.
 
 
 14
 No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness.
 
 
 15
 Restatement (Second) of Torts, Sec. 652C comment d. The district court found that the brief shots of plaintiff in the 20/20 segment "Gun for Hire" were merely incidental to the news story regarding a contract murder ring operating out of a business where plaintiff worked and did not constitute a commercial use of plaintiff's likeness. Because there is nothing in this record to contradict that finding, we agree with the district court that summary judgment was appropriate on this claim.
 
 III.
 
 16
 In conclusion, plaintiff has failed to raise any issues of material fact concerning her claims for defamation, invasion of privacy, false light, and appropriation of likeness for a commercial purpose. Accordingly, the district court's order granting defendants' summary judgment under Fed.R.Civ.P. 56 is AFFIRMED.