Albert FRANCIS, Jr., Plaintiff,

v.

Thomas A. COUGHLIN, III, Commissioner, Department of Correctional Services; Charles J. Scully, Superintendent, Green Haven Correctional Facility; Ronald Miles, Captain; Lt. Charles Greiner; Sgt. B.J. Farrell; Ronald Leight; Richard W. Prouty, Frank Arizmendi, Correctional Officers; Harold J. Smith, Superintendent, Attica Correctional Facility; and Charles Hernandez, all of New York State Department of Correctional Services, Jointly, Severally & Individually, Respectively, Defendants.

No. 84 Civ. 1990 (RO).

United States District Court, S.D. New York.

Jan. 29, 1991.

Hughes Hubbard & Reed, New York City (William R. Maguire, Andrew C. Callari, Zvi Joseph, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Charles F. Sanders, Andrea M.A. Osborne, Asst. Attys. Gen., of counsel), for defendants Greiner and Miles.

## OPINION & ORDER

OWEN, District Judge:

These post-trial motions follow a jury verdict in plaintiff Albert Francis' favor on his § 1983 civil rights claims against defendants Ronald Miles and Charles Greiner. Defendants were officials at Green Haven Correctional Facility when plaintiff, an inmate at the time, was charged with assaulting Correction Officer Arizmendi during an inmate disturbance that took place on July 23, 1982. Defendants conducted separate disciplinary hearings and each found Francis guilty and committed him to the prison's Segregated Housing Unit (SHU), where he remained for a total of 273 days.[1]

Francis claimed that both defendants were biased hearing officers and that defendant Miles violated New York State's seven-day rule.[2] After a 5–day trial at which all issues were sharply contested, the jury found that the disciplinary hearings that defendants conducted were unfair and that Francis had not participated in the inmate disturbance. It awarded compensatory damages of $150,000 and punitive damages against defendants in the amount of $819. Arguing that the verdict was not supported by the evidence and the jury's compensatory damages award was excessive and flawed, defendants now seek judgment notwithstanding the verdict or, in the alternative, a new trial. Plaintiff moves for attorneys' fees and costs.

Turning first to defendants' motions based upon the sufficiency of the evidence,

I note that the standards for judgment notwithstanding the verdict or for a new trial are burdensome. JNOV is only appropriate if the "evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). In ruling on a new trial motion, a trial judge is to "view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978).

Either standard places a heavy burden. I cannot say that the jury had no basis on which to conclude that the hearings that defendants conducted were not impartial or that Francis was not the person who participated in the disturbance. The jury heard and observed the conflicting testimony of plaintiff, both defendants and several correction officers who testified at the disciplinary hearings. Moreover, the applicable legal principles were not unduly complex. I cannot say that the jury's verdict on liability constituted a miscarriage of justice, and I therefore decline to disturb the jury's verdict on liability.

The jury's damage awards—both compensatory and punitive—are, however, troubling, and appear to be the result of some error, confusion, or what the jury deemed the law ought to be. During my charge, the jury was instructed separately as to the law governing the awarding—not

---

1. Defendant Greiner conducted the initial hearing against Francis. After he was found guilty, Francis challenged that determination in state court, and the results of the first hearing were vacated. Thereafter, defendant Miles conducted a second hearing on the charges, Francis was again found guilty, and that determination also was vacated in state court.

2. Under New York law, an inmate has a right to a superintendent's proceeding within seven days of confinement to keeplock or SHU. *Johnson v. Smith*, 83 A.D.2d 721, 442 N.Y.S.2d 648 (3rd Dept.1981).

the amount—of compensatory and punitive damages. The verdict form in separate questions asked the jury to state whether it found compensatory and/or punitive damages were appropriate. It thereafter contained a space for the jury's award of compensatory damages, if appropriate. However, the form did not contain a space for an amount of punitive damages, if appropriate, because pursuant to such authority as *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 373–74 (2d Cir.1988), it was the Court's intention to take further testimony as to defendants' assets, since no information about the defendants' financial positions had been put before the jury prior to their initial deliberations and, at plaintiff's request—which was opposed by the defendants—, the jury was specifically *not* instructed that a further hearing on the defendants' assets would follow and require further deliberations on punitive damages.[3]

After deliberating for some time, the jury sent a note to the Court in which it asked defendants' salaries. The jury was instructed that the information was not part of the evidence before it. Shortly after, the jury returned a verdict in writing that awarded plaintiff compensatory damages as against both defendants in the amount of "one year's gross salary" of each of the defendants on plaintiff's claim that defendants were biased hearing officers, and "one month's gross salary" on the claim that defendant Miles had violated the seven-day rule. On the verdict form, the jurors stated that an award of punitive damages would be appropriate.

The Court instructed the jury that it could not accept the compensatory damage awards that were written in on the verdict sheet, stating:

> You have answered question 4(b) which calls for compensatory damages, compensatory, recompense for damage, one year Greiner's base salary. You have answered 8(b) which asks the same question as to Miles, one year base sala-

ry (Miles), and as to 10(a), one month's salary (Miles).

> Now, I cannot accept that verdict on your part because it is obviously not in accordance with the law that is applicable, which is that you look at what the plaintiff has been damaged and you make a determination of what he has been damaged, and accordingly I'm going to reject those three answers and I am going to read to you again my charge on the law of damage and send you back for further deliberation.

After repeating its charge on the law of damages, the Court sent the jury back for further deliberations. Fifteen minutes later, the jury returned with a verdict of compensatory damages in the amount of $60,000 as against defendant Greiner and $90,000 as against defendant Miles[4] and, the jury having stated punitive damages were appropriate, evidence was received as to the defendants' salaries, assets and other financial information, and the jury was sent back out to determine punitive damages. It thereafter returned a verdict of $273 punitive damages against Greiner, and $546 against Miles.

■ Concluding as I do that the jury's verdict was the result of error or improper confusion as to the law of damages, I grant defendants' motion for a new trial on damages. This conclusion stems from several factors. First, the jury's note that preceded its compensatory damages verdict and the first verdict it returned on compensatory damages make clear that the jury was focusing on an amount of damages based on defendants' financial position, not the harm suffered by plaintiff. Such a calculation is obviously punitive in nature and not an appropriate basis for a compensatory damages award.

Second, when the jury finally did put its compensatory damages award in dollar terms (instead of in relation to defendants' salary), the disparity between the awards against the two defendants can only be

---

**3.** Plaintiff for obvious reasons did not want the jury to be aware that if it found punitive damages awardable it had further work to do.

**4.** The jury awarded $80,000 against Greiner on the prejudgment/bias claim, and $10,000 on the seven-day rule claim.

reconciled by viewing the awards as punitive, not compensatory. On the bias claims, the jury awarded $60,000 against defendant Greiner and $80,000 against defendant Miles. However, plaintiff had spent more time in SHU as a result of the Greiner hearing than he did after the Miles hearing. Thus, if the verdict was viewed in per diem terms, it reflects a grossly disproportionate award against defendant Miles and the record contains nothing to support this difference:

| Defendant | Gross Award | Days in SHU | Award in Per Diem Amount |
|---|---|---|---|
| Greiner (bias claim) | $60,000 | 192 | $ 312.50 |
| Miles (bias claim) | $80,000 | 57 | $1,403.50 |
| Miles (7–day rule) | $10,000 | 25 | $ 400.00 |

This disparity reflects that, notwithstanding my instructions to the contrary, the jury continued to base its award on the defendants' financial positions. I note in this regard that the jury was within $10,000 of defendant Miles' actual salary, and within $6,000 of defendant Greiner's actual salary, which tends to confirm that the jury was trying to guess those figures and indeed was quite successful at it.

The final factor that indicates that the jury impermissibly assessed punitive damages where compensatory damages were called for is evident in the jury's ultimate award of $273 in punitive damages as to Greiner and $546 as to Miles. Given the threshold finding that the jury had to make in order to impose punitive damages—that defendants "acted so maliciously or wantonly or outrageously in a way that [they] should pay a penalty for that, so [they] and others in the future will be deterred from engaging in the same conduct"—and the information presented to the jury about defendants' salaries, the punitive damages award is so "punitively" insignificant that I can only conclude that jury felt it already had rendered a punitive damages award and reported nominal figures to conclude its duties.

■ Whether the jury's conduct is viewed as confusion as to the applicable instructions, error, or its own erroneous version of the law, such an award may not stand and a new trial on these issues is required. *See, e.g., Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2nd Cir.1988). *See also Beard v. Akzona, Inc.*, 517 F.Supp. 128, 134 (E.D.Tenn.1981). Further, I do not believe that the Court's amending the award is the solution. As another Judge said, "I have no confidence that any choice I might make is the one which the jury would have approved," *McSparran v. Hanigan*, 225 F.Supp. 628 (E.D.Pa.1963), had it followed my instructions properly. "It would be an invasion of the jury's function rather than the correction of a formal defect" to attempt to make this verdict conform to the law. *Id.* Moreover, I have an awareness of the very real consequences of a jury's categorization of damages as either compensatory or punitive when a state employee is involved, for the State pays the compensatory and the individual is responsible for the punitive award.

Accordingly, a new trial is ordered as to all issues bearing upon damages, both compensatory and punitive, and the parties are directed to appear before me at 10:30 a.m. on Friday, February 22, 1991 in order to schedule such retrial.

So ordered.