IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2000 Session

## DEWEY LINEBERRY v. JASON LOCKE, ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 9355 and 9431     Jim T. Hamilton, Judge**

_____

**No. M1999-02169-COA-R3-CV - Filed July 31, 2000**

_____

A citizen whose private photographs and video tapes were seized in the execution of a search warrant sued the sheriff and a deputy for invasion of privacy and outrageous conduct. The trial judge directed a verdict for the defendants at the close of the plaintiff's proof. Because we agree that the plaintiff did not prove either cause of action, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Henry Clay Barry, Lebanon, Tennessee, Elliott Ozment, Nashville, Tennessee, and Troy Brooks, Clarksville, Tennessee, for the appellant, Dewey Lineberry.

Thomas I. Carlton, Jr. and Rebecca Wells Demaree, Nashville, Tennessee, for the appellees, Terry Ashe and Jason Locke.

**OPINION**

**I.**

On January 12, 1994, the Wilson County Sheriff's Department executed two search warrants describing the home and office of the plaintiff, Dewey Lineberry. The warrants, obtained by the district attorney general, commanded the officers to search for and seize an affixed two-way mirror located on the third floor of the office building along with cameras, lenses, video tapes, recording equipment, and any records cataloging taped events. During the search the officers found revealing photographs of the plaintiff's girlfriend, and video tapes showing the plaintiff engaged in sexual acts with various women. In order to identify what was on the video tapes found at the plaintiff's home, the officers viewed them in the presence of the plaintiff's son and others.

Following the search, the district attorney general instructed one of the officers to try to identify the women in the video tapes. In an effort to comply, the officer, Defendant Jason Locke, showed the tapes to plaintiff's girlfriend and another person who appeared in the scenes taped through the two-way mirror.

On January 14, 1994, a local newspaper carried a story about the events surrounding the search. The reporter quoted an anonymous source describing the materials seized as "sexually explicit photos and tapes depicting a wide array of carnal activity." The source also said "some of the activity was apparently recorded through a two-way mirror located in 'a waiting room area' of the office building . . .", and "Lineberry [the plaintiff] is shown in many of the photos and videos." The reporter refused to reveal his source, and the source has never been identified.

## II.

This is not an action over the execution of the search warrant; rather it is about revealing the evidence seized in the search. The complaint alleges that revealing the evidence amounted to an invasion of privacy and outrageous conduct because it was done maliciously, willfully, and oppressively.

The distinction we make is important, because we cannot foresee a sheriff or his deputies incurring any liability by following the command of a facially valid search warrant. The sheriff's duty is to execute the warrant, Tenn. Code Ann. § 8-8-201(5)(A), and the failure to do so is a contempt of court, Tenn. Code Ann. § 8-8-207. In addition, police officers enjoy a qualified immunity, which protects them from liability – even if the search was unlawful – if the officer did not know the search violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635 (1987).

Although the defendants raised an immunity defense, the lower court did not explore the question of whether the sheriff's immunity extended to events that occurred after the search, and the defendants have not pressed the immunity question on appeal. The parties have treated this complaint as stating a cause of action for ordinary invasion of privacy and outrageous conduct, without regard to the official positions of the two defendants. We will do the same.

## III.
### INVASION OF PRIVACY

A person has "the right to be let alone; the right ... to be free from unwarranted publicity." *Langford v. Vanderbilt University*, 287 S.W.2d 32, 38 (Tenn. 1956). In *Martin v. Senators, Inc.*, 418 S.W.2d 660 (Tenn. 1967), the Court adopted the *Restatement* definition of the tort: "A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other." *Restatement of Torts* § 867. The Court also quoted the comments which said: "It is only where the intrusion has gone beyond the limits of decency that liability accrues." *See Restatement of Torts* § 867 cmt. d.

The tort has been further divided into four separate acts of the defendant: (1) intrusion into the plaintiff's physical solitude or seclusion; (2) public disclosure of private facts; (3) false light; and (4) appropriation of another's name or likeness for advertising or other business purposes. *Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954, 963 (W.D. Tenn. 1995). The only conduct asserted by the plaintiff in this case is the defendant's public disclosure of private facts. "Public disclosure" has to be understood in a particularized sense. In *Beard v. Akzona, Inc.*, 517 F. Supp. 128 (E.D. Tenn. 1981), the Court said that "[c]ommunication to a single individual or to a small group of people, absent . . . [a] confidential relationship, will not give rise to liability." 517 F. Supp. at 132. At another place the Court said (citing *Restatement (Second) of Torts* § 652D cmt. a) that public disclosure means "communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." 517 F. Supp. at 133.

The evidence of publication of the materials found in the search is that the officers viewed some of the tapes at the scene in the presence of the plaintiff's son and possibly two other persons. The son, however, testified that he left the room, and there is no evidence that the other persons present saw what the officers saw. In addition, in an effort to identify some of the other alleged "victims" of the plaintiff's conduct, Officer Locke showed some of the tapes to two of the women involved. The plaintiff complains of the publication of the story in the Lebanon newspaper, but there is no proof that the story came from either of the defendants.

It is our opinion that the limited exposure of the content of the materials seized in the search is not sufficient to make out a cause of action for the invasion of privacy. In order to properly execute the search warrant the officers had to view the material they found. They did not require anyone else to view them at the scene, nor did they invite public scrutiny. Officer Locke showed some of the tapes to two of the women involved in the activity. But their viewing could hardly be called publishing the material, since both witnesses were already aware of what had been going on in the areas where the filming took place.

## IV.
### OUTRAGEOUS CONDUCT

In *Dunn v. Moto Photo, Inc.,* 828 S.W.2d 747 (Tenn. Ct. App. 1991), this Court reviewed the Tennessee cases that led to the recognition of the tort of outrageous conduct. The Court quoted at length from *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270 (Tenn. 1966), which, in turn, quoted from *Restatement (Second) of Torts* § 46 cmt. d: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." The same comment stated that it was not enough that the defendant "has acted with an intent which is tortuious or even criminal . . . or even that his conduct has been characterized by 'malice'." This basic requirement for establishing the tort has consistently appeared in our cases since it first appeared. *See Newsom v. Textron Aerostructures*, 924 S.W.2d 87 (Tenn. Ct. App. 1995); *Bringle v. Methodist Hospital*, 701 S.W.2d 622 (Tenn. Ct. App. 1985); *Dunbar v. Strimas*, 632 S.W.2d 558

(Tenn. Ct. App. 1981); *Moorhead v. J.C. Penney Co., Inc.*, 555 S.W.2d 713 (Tenn. 1977); *Swallows v. Western Electric Company, Inc.*, 543 S.W.2d 581 (Tenn. 1976); *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn. Ct. App. 1975).

Ordinarily the question of whether the defendants' acts are "outrageous in character and extreme in degree" should go to the jury, *Dunn v. Moto Photo, Inc.*, but "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Restatement (Second) of Torts* § 46 cmt. h (quoted in *Medlin v. Allied Inv. Co.*, 398 S.W.2d at 275); *see also Alexander v. Inman*, 825 S.W.2d 102, 105 (Tenn. Ct. App. 1991). Thus, many of our cases dismiss outrageous conduct claims, either on summary judgment or at the close of the plaintiff's proof. *Newsom v. Textron Aerostructures*, 924 S.W.2d 87 (Tenn. Ct. App. 1995); *Fann v. City of Fairview*, 905 S.W.2d 167 (Tenn. Ct. App. 1994); *Highfill v. Baptist Hospital, Inc.*, 819 S.W.2d 436 (Tenn. Ct. App. 1991).

For many of the reasons discussed in Part IV of this opinion, we hold that the plaintiff failed to prove that the defendants were guilty of outrageous conduct. Even if the defendants intentionally made public the materials found in the search, their conduct might amount to another tort, but not outrageous conduct.

## V.

The appellant raised several issues in his brief regarding the exclusion of evidence, but he does not include anything in the argument section of the brief about these issues. He does not cite the portions of the record where the alleged errors occurred, nor does he attempt to show how the trial court's actions prejudiced his case.

This Court is not required to search the record to find the proof relied on to support a party's contentions. *Redbud Cooperative Corp. v. Clayton*, 700 S.W.2d 551, 557 (Tenn. Ct. App. 1985). Therefore, we will not address these issues, as we assume that the appellant has waived them.

We affirm the judgment of the trial court, and the cause is remanded to the Circuit Court of Wilson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Dewey Lineberry.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.