**Casper CITRON, Steven Casper Henry Citron and Alisande Citron Slivka, Plaintiffs,**

**v.**

**Fiona Graham CITRON, M.D., Defendant.**

No. 81 Civ. 5212 (WK).

United States District Court, S. D. New York.

May 25, 1982.

As Amended June 1, 1982.

London & Buttenwieser by Helen Buttenwieser, New York City, for plaintiffs.

Greene & Zinner by Stanley S. Zinner, White Plains, N. Y., for defendant.

## MEMORANDUM AND ORDER

### WHITMAN KNAPP, District Judge.

This is an action for unlawful interception of telephone communications in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 (the "Act"). Following trial on the merits, the defendant moved to dismiss the complaint. We now grant that motion.

### The Statute

The relevant statutory provisions are found in Sections 2511 and 2520 of the Act. Insofar as here applicable, Section 2511 makes guilty of a felony (except as otherwise specifically provided) any person who:

"*willfully* intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication...." (Emphasis supplied.)

The Section also provides that violators shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Section 2520 provides for the imposition of several forms of civil sanctions on those who violate the statute:[1] compensation for actual damages suffered by any victim of a violation, or—if higher—"liquidated" damages of $100 a day, but not less than $1,000; punitive damages; and counsel fees. Thus the Section states in pertinent part:

"Any person whose wire or oral communication is intercepted, disclosed, or used *in violation of this chapter* shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred." (Emphasis supplied.)

Section 2520 also contains a "good faith" defense, which provides:

"A good faith reliance *on a court order or legislative authorization* shall constitute a complete defense to any civil or criminal action brought under this chapter or any other law." (Emphasis supplied.)

### The Instant Litigation

*Background*

Plaintiff Casper Citron (the "husband") and defendant Fiona Graham (the "wife") were married in 1970. Their marriage has been stormy, featured by bitter disputes about the care and custody of their adopted children. The wife ultimately filed a complaint for divorce in New York County Supreme Court, to which complaint the husband promptly filed a counter-claim. The marital action is now pending in that court.

---

1. The statute provides civil sanctions only for actions taken in violation of its penal provisions. Thus, Chief Judge Lord observed in *Kratz v. Kratz* (E.D.Pa.1979) 477 F.Supp. 463 at 483:

"[N]o civil cause of action arises under Title III *unless* the criminal provisions of the statute have been violated." (Emphasis in original.)

See also *Anonymous v. Anonymous* (2d Cir. 1977) 558 F.2d 677 at 677 (affirming dismissal of a *civil* action under Title III with the observation that "the facts alleged here do not rise to the level of *criminal* conduct intended to be covered by the federal wiretap statutes....") (Emphasis supplied.) *Accord, Beard v. Akzona* (E.D.Tenn.1981) 517 F.Supp. 128, 133.

The husband is a television and radio commentator accustomed to public appearances and public speaking. The wife is a psychiatrist with no such experience. She testified that she was apprehensive she would be no match for her husband in court, and that she therefore feared losing the children. To redress this perceived imbalance, she intercepted various of the husband's telephone conversations, hoping to obtain self-revealing information with which to confront him in the marital action.

The means she adopted was to place a recording device on a telephone line which had an extension in the parties' marital bedroom and another in the husband's business office. The device made recordings on a removable "cassette" and was automatic; that is to say, as soon as the receiver was taken off the hook on either of the telephone extensions, the device would start recording, and would continue to do so until the receiver was replaced. Each cassette had a playing time of 180 minutes (90 minutes on each side) so, once connected to the telephone line, it would automatically record a total of 90 minutes of conversation without human intervention.

The device recorded several conversations by the husband which appear relevant to the pending marital litigation. However, numerous other conversations (both business and social) between the husband and various persons, including two of his children by a former marriage, plaintiffs Steven and Alisande, were also recorded.

At trial, the defendant wife testified that she acquired the interception device through a mail order house by responding to an advertisement in the *New York Times.* She said that the first interception turned out to be a social conversation between the husband and a woman, making her apprehensive about the propriety of her conduct. She therefore sought legal advice. The lawyer she consulted assured her that she need not worry,[2] and she continued with the interceptions.

*Prior Proceedings*

When the instant complaint was filed, the defendant wife moved to dismiss on the authority of *Anonymous v. Anonymous* (2d Cir. 1977) 558 F.2d 677. We denied that motion noting that—unlike the situation in *Anonymous*—the interceptions here involved were alleged to have been automatic and continuous throughout a several month period, and were concededly not confined to conversations between the husband and persons directly related to the pending marital action.

At the close of plaintiffs' evidence and again at the close of the whole case, the defendant wife renewed her motion based on *Anonymous,* and added the ground that there was no evidence to show that her conduct had been "willful" within the meaning of the statute. These motions were denied and the case submitted to the jury on special interrogatories.

The jury was asked to state on how many different days the defendant wife had intercepted conversations of each plaintiff, and what if any actual damages the respective plaintiffs had suffered. They found that interceptions had occurred on sixteen different days, and that conversations of plaintiff husband had been involved on each of those days. They found conversations of plaintiff's son Steven to have been intercepted on seven days; and of his daughter Alisande, on three. They further found that no plaintiff had suffered any actual damage as a result of such interceptions. On our then understanding of the statute, these responses would have entitled plaintiffs to recover "liquidated" damages totaling $3,600—$1,600 for plaintiff husband ($100 for each day of interception), and $1,000 each for plaintiffs Steven and Alisande.

With respect to punitive damages, the jury was directed to assess such damages only if they answered the following question in the affirmative:

> "Do you find that the defendant either knew she was violating the law or acted

2. Compare *Simpson v. Simpson* (5th Cir. 1974) 490 F.2d 803, *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 with *Kratz v. Kratz, supra.*

in reckless disregard of whether or not her conduct was unlawful?"

They answered this question in the negative. Accordingly, no punitive damages were specified.

Upon return of the verdict, the defendant renewed her previous motions, and moved to dismiss on the further ground that, since the verdict established that she had acted neither with intent to violate the law nor in reckless disregard of her legal obligations, her conduct could not be deemed "willful" and she could not be found to have violated the statute. We denied these motions, and directed plaintiffs' attorney to prepare an application for counsel fees.

We have since reconsidered our ruling as to defendant's final motion,[3] and have come to the conclusion that her position is sound.

### Discussion

■ In drafting Title III of the Omnibus Safe Streets and Crime Control Act, the Congress was primarily concerned with regulating the electronic surveillance activities of law enforcement officials. *See* S.Rep. No.1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2153–56; *Briggs v. American Air Filter Co., Inc.* (5th Cir. 1980) 630 F.2d 414, 418; *Anonymous v. Anonymous, supra,* 558 F.2d at 677.[4] *But see United States v. Jones* (6th Cir. 1976) 542 F.2d 661, 669. The Act nevertheless contemplates imposition of serious penalties against *any* person found

"willfully" to have engaged in conduct violating its provisions—law enforcement personnel and private citizen alike. On the criminal side, violators face imprisonment of up to 5 years and a maximum fine of $10,000 or both; and on the civil side— apart from compensatory damages and attorney's fees—both traditional punitive damages, and the possibility of "liquidated" damages with no apparent relationship to actual harm suffered. Moreover the statute makes no distinction in the quantum of evidence necessary for invocation of those sanctions. Once willfulness is shown everything else follows, no further guidance being provided as to the state of mind appropriate to support imposition of its various criminal and civil sanctions.[5]

In such circumstances, the word "willfully" is usually read to connote intentional violation or reckless disregard of the law. *See, e.g., United States v. Murdock* (1933) 290 U.S. 389, 394–96, 54 S.Ct. 223, 225–26, 78 L.Ed. 381; *Goodman v. Heublein, Inc.* (2d Cir. 1981) 645 F.2d 127, 131.

In *Murdock,* for example, the Supreme Court observed (290 U.S. at 394–95, 54 S.Ct. at 225):

"The word [willful] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. The word is also employed to characterize a

---

**3.** Although the jury's finding that interceptions occurred on only 16 days to some extent undercuts the rationale of our refusal to dismiss on the authority of *Anonymous v. Anonymous,* we nevertheless adhere to the view that that case does not control where, as here, at least some conversations having no relevance to the marital dispute were intercepted.

**4.** As the *Briggs* Court observed (630 F.2d at 418):

"The act was passed to 'clarify the confusion' in the state of the law governing surveillance *and wiretaps by law enforcement officials. See* [S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112] at 2154. The prohibition on private wiretapping and surveillance appears to be an almost incidental extension, added be-

cause 'virtually all concede that the use of wiretapping or electronic surveillance techniques by private unauthorized hands has little justification when communications are intercepted without the consent of one of the participants.' *Id.* at 2156."

**5.** We thus reject the rule set forth in *Jacobson v. Rose* (9th Cir. 1978) 592 F.2d 515, *cert. denied,* 442 U.S. 390, 99 S.Ct. 2861, 61 L.Ed.2d 298, that an award of punitive damages must be supported by a stronger showing than necessary for compensatory damages. At 520. If, as this Circuit has ruled (see fn. 1., *supra*), only criminal conduct is covered by the statute, it follows that punitive damages must be available once liability has been established. This, of course, is contrary to the views we expressed to counsel during the course of the trial.

thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act." (Citations omitted.) The Court later made clear that the bad purpose to which it there referred is simply the "voluntary, intentional violation of a known legal duty." *United States v. Pomponio* (1976) 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12. *Accord, United States v. Bishop* (1973) 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941.

Similarly in *Goodman*, the Second Circuit referred with approval to a jury charge that a finding of willfulness would have to be based on a showing that the defendant either knew its conduct to be prohibited by the statute there in question (the Age Discrimination in Employment Act), or showed reckless disregard as to whether it was or was not. 645 F.2d at 131. That Court has adopted comparable formulations in a wide variety of settings. *See, e.g., United States v. Schiff* (2d Cir. 1979) 612 F.2d 73, 78 n.6 (income tax); *United States v. Winston* (2d Cir. 1977) 558 F.2d 105, 107–08 (Railway Labor Act); *United States v. Tolkow* (2d Cir. 1976) 532 F.2d 853, 858 (Welfare and Pension Plans Disclosure Act); *United States v. Ottley* (2d Cir. 1975) 509 F.2d 667, 672 (Landrum-Griffin Act). *See also United States v. Lizarraga-Lizarraga* (9th Cir. 1976) 541 F.2d 826, 828; *Beard v. Akzona* (E.D.Tenn.1981) 517 F.Supp. 128, 134.

It is this line of authority on which defendant relies in asserting that the jury's verdict, which establishes that she acted neither with intent to violate the law nor in reckless disregard of her legal obligations,

exonerates her from liability under Title III. She cites in support of this argument the legislative history of the Act, which refers with approval to the analysis of willfulness found in the *Murdock* opinion. S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2181.

As indicated above, we are now in accord with the defendant's position. We set forth below both the reasoning which initially led us to reject it, and the considerations which now persuade us that such reasoning was faulty.

■ Despite the Supreme Court's pronouncement in *Murdock*, courts have recognized that even in a criminal context, the word "willfully" must sometimes be given a more restricted meaning if logically required by the general statutory scheme in which it appears. *See, e.g., United States v. Dixon* (2d Cir. 1976) 536 F.2d 1388, 1397; *United States v. Schwartz* (2d Cir. 1976) 464 F.2d 499, *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302.[6] We initially believed that the affirmative defense found in Section 2520 of the Act would necessitate some such adjustment in the meaning of "willfully". As above noted, that Section provides in part:

"A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or any other law."

It seemed to us that such a provision would be superfluous if the word "willful-

---

**6.** Judicial response to Section 32(a) of the Securities and Exchange Act is illustrative. That Section provides for the imposition of various criminal penalties on individuals who willfully engage in certain activity. It goes on to state, however, that no person may be *imprisoned* for such willful behavior if he acted with "no knowledge" of the rule he is claimed to have broken. 15 U.S.C. § 78ff(a). Such a "no knowledge" defense would be superfluous if the word "willful" as used in Section 32(a) were understood to import intention to violate, or even reckless disregard of, the law. Courts have accordingly interpreted that word as there employed in a more limited fashion. Thus, in

*United States v. Dixon* (2d Cir. 1976) 536 F.2d 1388, Judge Friendly observed (at 1397):

"[T]he context of § 32(a) of the Securities and Exchange Act, [including] the clear inference that a person may be convicted (although not imprisoned) for violating a rule of whose existence he is unaware shows that "willful" has less than its ordinary significance in prosecutions for violation of the [clause as to which that is the case]; and that the requirement would be satisfied by the lesser showing outlined in *Peltz* [433 F.2d 48 (2nd Cir.)] [a more restricted meaning than that set forth in either *Murdock* or *Goodman*]."

ly" were meant to preclude liability where neither intentional nor reckless disregard of the law had been established. As is immediately apparent, no one relying on a court order or legislative authorization could reasonably be deemed to have acted with *intent* to violate the law. Further, focussing solely on the defendant before us—a private citizen having no connection or experience with law enforcement—we did not believe that such a person could rationally be found to have been *reckless* just because an official authorization on which he or she may have relied should for some reason turn out to be invalid. It therefore seemed to us that "willfully" could not be given its usual broad construction, and that the defendant could be held liable for her intentional conduct although she had not been shown to have a specific intent to violate the law.

■ This reasoning, however, overlooked the obvious. It is on reflection self-evident that the good faith defense simply does not apply to actions (civil or criminal) against persons not engaged in law enforcement. There exists no statutory procedure whereby such persons can secure official authorization of interceptions they wish to make; thus, they will never be in a position to invoke the defense. The defense is instead available only to law enforcement personnel and to others who—like telephone company employees—may be expected to assist in implementing the authorized interceptions expressly contemplated by the Act.

Moreover, the good faith defense is by no means superfluous when applied to law enforcement personnel and those who cooperate with them. In view of their presumed familiarity with the law in this area, they might well be considered *reckless* should it be shown that they were less than diligent in ascertaining the validity of an authorization which later turned out to have been invalid. The Congress apparently concluded that it was important to the purposes of the Act that those called upon to implement officially sanctioned interceptions should be protected from liability as long as they relied in good faith on facially valid authorizations. The defense here in question—far from being superfluous—carries out that legislative judgment.

■ There is thus no logical barrier to giving the word "willfully" the meaning ordinarily attributed to it in a criminal context. We accordingly hold that liability under Title III—be it civil or criminal—cannot be established against any defendant without showing that he acted with intentional or reckless disregard of his legal obligations.

This holding is consistent with the *results* achieved in those cases—both civil and criminal—that have dealt with defendants, such as law enforcement officials and telephone company employees, to whom the good faith defense is available. *See, e.g., Campiti v. Walonis* (1st Cir. 1979) 611 F.2d 387, *affirming* 453 F.Supp. 819 (D.Mass. 1978); *Jacobson v. Rose* (9th Cir. 1978) 592 F.2d 515, *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298; *United States v. McIntyre* (9th Cir. 1978) 582 F.2d 1211; *United States v. Schilleci* (5th Cir. 1977) 545 F.2d 519. It is also consistent with the only two cases of which we are aware that have specifically considered the quantum of proof necessary to prevail in a civil action against defendants not engaged in law enforcement. *Beard v. Akzona, supra*, 517 F.Supp. 128; *Kratz v. Kratz*, (E.D.Pa.1979) 477 F.Supp. 463 at 483–84. Finally, it honors the congressional intent that the proscriptions contained in the wiretap statute apply to all categories of persons, while making clear that—despite the fears expressed by some judges (*See, e.g., Anonymous v. Anonymous, supra; United States v. Jones, supra*, 542 F.2d at 673; *Simpson v. Simpson*, (5th Cir. 1974) 490 F.2d 803, *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141)—the statute does not mandate interference in the private affairs of individuals having no reason to suspect they may be violating the law.

■ The jury verdict having established that the defendant acted neither with intent to violate the law nor in reckless disregard of her legal obligations, she may not be deemed to have violated the proscriptions of Title III. We therefore grant the

defendant's final motion to dismiss the complaint.

Let judgment enter accordingly.

SO ORDERED.