CAROL PINE, executrix, & another[1] vs. FREDERIC W. RUST,
THIRD, trustee, & others.[2]

Suffolk. December 6, 1988. — March 23, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Eavesdropping. Practice, Civil,* Judgment. *Damages,* Punitive, Attorney's
fees, Liquidated damages. *Survival of Action.*

In a civil action under G. L. c. 272, § 99, the statute regulating wiretapping
and eavesdropping, which arose from the defendants' engaging in a plan
of secretly tape recording a private meeting, plaintiffs seeking an award
of damages pursuant to § 99 Q were not required to show that the
violation of the statute was intentional or in reckless disregard of legal
obligations. [413-414]

Plaintiffs who sought punitive damages under G. L. c. 272, § 99 Q, from
a number of defendants who had acted in concert to make a single tape
recording of a private meeting, were not restricted to a single award,
but were entitled to seek recovery from each defendant individually.
[414-415]

Where, in an action under G. L. c. 272, § 99, the plaintiffs showed that
the defendants had illegally intercepted, disclosed, or used certain of
the plaintiffs' communications, but did not show any actual harm to the
plaintiffs as a result, it was error for the judge to award them punitive
damages. [415-416]

In an action under G. L. c. 272, § 99, the statute regulating wiretapping
and eavesdropping, the judge did not, in the circumstances, abuse his
discretion in awarding attorney's fees, the bulk of which were incurred
by the plaintiffs after the defendants admitted liability and offered a
minimal settlement, where complex factual and legal issues remained
in the case. [416-417]

---

[1] Mr. G. Emil Ward. Mr. Robert Patt, one of the two original plaintiffs
to this action, died during its pendency. Upon motion of Carol Pine, the
judge allowed her substitution for Mr. Patt in her capacity as executrix of
Mr. Patt's estate.

[2] Longfellow Management Co., Inc., Louise Rust, Paul Dutkiewicz. The
judge dismissed all claims against an additional defendant, Christine Dut-
kiewicz.

Claims by one of two plaintiffs under G. L. c. 272, § 99, arising from the defendants' interception, disclosure, or use of certain private communications, could not be said to be claims for "damage to the person" for purposes of the Massachusetts survival statute, G. L. c. 228, § 1, and thus they did not survive that plaintiff's death. [417-418]

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on February 9, 1982.

The case was heard by *Patrick J. King*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John O. Mirick (Richard C. Van Nostrand* with him) for the defendants.

*Gerald E. Katz* for the plaintiffs.

LYNCH, J. This action arises under the wiretap statute, G. L. c. 272, § 99 (1986 ed.).[3] After a nonjury trial in the Housing Court of the City of Boston, the judge awarded statutory liquidated damages, punitive damages, and attorney's fees and costs. Defendants concede that the tape recording was unlawful, but appealed the awards of damages and attorney's fees. We transferred the case to this court on our own motion. We affirm in part, reverse in part, and remand on the issue of attorney's fees and costs.

The facts found by the trial judge may be summarized as follows. At all times relevant to this action, the defendant, Frederic W. Rust, III, was the trustee of various realty trusts which owned approximately 2,000 apartment units in Boston. The defendant, Longfellow Management Co., Inc. (Longfellow), was a Massachusetts corporation, responsible for the management of said apartment buildings. In the spring of 1980, Longfellow sent notices of substantial rent increases, averaging $1,000 per apartment per year, to the tenants in the apartments it managed for Rust. Upset about the proposed increase, a num-

---

[3] The complaint was amended to add counts for invasion of privacy under G. L. c. 214, § 1B, and violation of the Federal wiretap statute, 18 U.S.C. §§ 2510 et seq. (1982). After trial, the judge dismissed these two claims against all defendants.

ber of tenants formed the Longfellow Tenants Union (tenants union) and scheduled a series of meetings to which they invited all Longfellow tenants. Neither Rust nor any representatives of Rust or Longfellow Management were invited to attend, and certain steps were taken to ensure that none of their representatives were present at the meeting, which was held on July 17, 1980, at the apartment of one of the tenants. The tenants union invited two Boston attorneys, Mr. Robert Patt and Mr. G. Emil Ward, to attend the meeting to advise the tenants of their legal rights. Approximately seventeen other persons attended the meeting, all of whom were tenants except for Rust's wife, defendant Louise Rust, who gave a false name and address indicating she was a Longfellow tenant. Louise Rust carried a small tape recorder concealed in her purse and clandestinely tape recorded parts of the meeting.

Louise Rust attended the meeting at the direction of Rust, and planned the secret tape recording with Rust and her brother, Paul Dutkiewicz, who lived with the Rusts and loaned them his tape recorder in furtherance of the plan. By July, 1980, it was evident that litigation would ensue over the proposed rent increases and that the purpose of Louise Rust's covert presence at, and recording of, the meeting was to aid Rust and Longfellow in ascertaining the tenant union's strategy so as to gain a tactical advantage in any litigation. Information was illegally obtained by the secret recording which was used to harass the tenants through threatening telephone calls and eviction actions.[4]

1. *Wilful violation of G. L. c. 272, § 99.* The defendants contend that, to make any award under G. L. c. 272, § 99 Q, the court must find that the violation of the statute was intentional or in reckless disregard of legal obligations. *Citron* v. *Citron,* 539 F. Supp. 621 (S.D.N.Y. 1982). The *Citron* court

---

[4]The judge found that, while the tape recording of the July 17, 1980, meeting was just one of a number of similar unlawful activities by Rust directed against the tenants union, that meeting was the only one attended by Mr. Patt and Mr. Ward. The tenants union ultimately decided to hire other counsel. Actions brought against the defendants by all of the other persons who attended that meeting were settled.

was interpreting the provision for civil remedies in the Federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. (1982). Although the Massachusetts statute "in major portion matches section for section" the provisions of the Federal act, *Commonwealth* v. *Vitello*, 367 Mass. 224, 251 (1975), there is a subtle but important difference between them, which obviates the defendants' argument on this point. The Federal law provides for a civil cause of action for "[a]ny person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter." 18 U.S.C. § 2520. To come within the criminal provisions of the Federal act, a person must act *wilfully*, §§ 2511, 2520, and a civil cause of action only arises where the criminal provisions of the act are violated. See *Citron* v. *Citron*, *supra* at 622 n.1, and cases cited. See also *Citron* v. *Citron*, 722 F.2d 14 (2d Cir. 1983), cert. denied, 466 U.S. 973 (1984) (affirming District Court judge's dismissal of complaint because violation was not wilful).

The Massachusetts statute, on the other hand, grants a civil remedy to any aggrieved person whose communications were intercepted, disclosed, or used, except as authorized by the statute. G. L. c. 272, § 99 Q.[5] To be actionable under § 99 Q, then, an interception need not rise to the level of criminal conduct covered by the penal provisions of the law. Even were this not the case, however, the wilfulness requirement of the criminal statute is satisfied by the judge's finding that "defendants maliciously spied upon a private meeting" in order "to wrongfully obstruct" lawful activities.

2. *Individual awards against each defendant.* The defendants also contend that, even if joint and several liability against the four defendants is appropriate, where they acted in concert to

---

[5] General Laws c. 272, § 99 Q, creates a civil cause of action for: "Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an interception except as permitted or authorized by this section . . . ." Section 99 B 6 defines "aggrieved person" as "any individual who was a party to an intercepted wire or oral communication . . . ."

make a single illegal recording, separate judgments against each defendant should not have been entered. We disagree. The statute provides a remedy for "*any* aggrieved person" against "*any* person who so intercepts, discloses or uses" intercepted communications (emphasis added). G. L. c. 272, § 99 Q. We have often held that "concurrent wrongdoers are independently liable under statutes designed to impose a penalty." *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 855 (1983). We see no reason to reach a different result here.

3. *Punitive damages*. The judge interpreted the statute as requiring him to impose punitive damages in this case, even though he found that no actual harm had been incurred.[6] Punitive damages are not favored in Massachusetts, and we have long followed the principle that, absent statutory authorization, punitive damages may not be awarded. See, e.g., *Lowell* v. *Massachusetts Bonding & Ins. Co.*, 313 Mass. 257, 269 (1943), and cases cited; *Boott Mills* v. *Boston & Me. R.R.*, 218 Mass. 582, 589 (1914). Even in jurisdictions where punitive damages are the norm, many courts apply the common law rule that actual harm is a prerequisite to an award of punitive damages. See *Leardi* v. *Brown*, 394 Mass. 151, 162-163 (1985), and cases cited. Courts that depart from that common law rule usually do so by presuming some actual damage occurred. We know of no instance where punitive damages have been awarded where it has been established that no actual harm occurred. In similar circumstances, in construing the consumer protection statute, G. L. c. 93A, we concluded that, where there was no actual harm shown, the plaintiffs were entitled to statutory, but not punitive (treble), damages. *Leardi, supra*. Thus, in ascertaining whether the Legislature intended

---

[6] General Laws c. 272, § 99 Q, states that aggrieved persons shall have a cause of action against any person who intercepts or discloses their oral communications, and "shall be entitled to recover from any such person —

"1. actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is higher;

"2. punitive damages; and

"3. a reasonable attorney's fee and other litigation disbursements reasonably incurred."

that punitive damages be awarded in addition to statutory damages where no actual harm was incurred, we draw the inference that the Legislature intended that the statute be applied consistently with the common law and the decisions of this court. *Leardi* v. *Brown*, *supra* at 167. We conclude, therefore, that the plaintiffs are limited to statutory damages.

4. *Attorney's fees*. After reviewing the plaintiffs' motion for attorney's fees and accompanying affidavits, the judge awarded attorney's fees in the amount of $16,350, and costs of $640.40. The defendants contend that the bulk of plaintiffs' counsel fees was incurred unnecessarily and therefore should be reduced to a nominal award. Their argument rests on defendants' admission of liability under the statute in their answer to plaintiffs' complaint, and on their offer of settlement approximately one year after the complaint was filed, consisting of the statutory minimum for liquidated damages and an additional amount for attorney's fees and costs. In their brief and in oral argument before this court, the defendants assert that an award for fees incurred after the offer of settlement would reward the plaintiffs and their attorney for "needlessly exacerbating" the litigation and would encourage plaintiffs not to accept fair and reasonable offers of settlement made pursuant to Mass. R. Civ. P. 68, 365 Mass. 835 (1974). This argument ignores one purpose of the civil remedies provision in c. 272, § 99, which is to encourage individuals to vindicate their rights under the statute. To do so, it is necessary to attract competent counsel to handle such cases. See *Campiti* v. *Walonis*, 467 F. Supp. 464, 467 (D.Mass. 1979) (construing identical damages provisions in Federal statute). If an offer of the statutory minimum amount of damages were all that could be expected by plaintiffs, there would be no need for provision in the law for the award of attorney's fees. The judge found that the case raised complex factual and legal issues, notably the issue of the defendants' motive in violating the statute. In addition, we had not yet expressly decided the issue whether actual damages must be awarded in order to recover punitive damages. See *Leardi* v. *Brown*, *supra* at 162. After reducing the amount requested to eliminate fees he felt unreasonable, the judge ruled that much

of the time expended after the offer of settlement was necessary and reasonable. Since the amount of a reasonable attorney's fee is largely discretionary, *McGrath* v. *Mishara*, 386 Mass. 74, 87 (1982), we rely on the trial judge's firsthand knowledge of the services performed in the case before him. *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 630-631 (1978). We agree that the issues of motivation and entitlement to punitive damages, as well as the issue of survivability of Mr. Patt's cause of action, see *infra*, were central to the plaintiffs' case, and see no reason to rule that the plaintiffs should have accepted the defendants' offer of statutory damages. As is demonstrated below, however, Mr. Patt's cause of action does not survive and therefore the award of attorney's fees to his estate must be reversed.

5. *Survivability of action.* The complaint in this action was filed on February 9, 1982. On January 9, 1984, plaintiff Robert Patt died. On November 15, 1984, the plaintiffs filed a suggestion of death of Mr. Patt and a motion to substitute Carol Pine, which was allowed on January 28, 1985. The defendants opposed the motion to substitute parties, and now contend it was error for the judge to grant the motion, arguing that claims under G. L. c. 272, § 99, do not survive the plaintiff's death. We agree.

At common law, a cause of action in tort did not survive the death of either party to the action. *Putnam* v. *Savage*, 244 Mass. 83, 85 (1923). This principle was altered by the Massachusetts survival statute, G. L. c. 228, § 1, as amended by St. 1975, c. 377, § 62, which enumerates specific tort actions which survive, including actions of tort "for assault, battery, imprisonment or other damage to the person." G. L. c. 228, § 1 (2) (a). In *Harrison* v. *Loyal Protective Life Ins. Co.*, 379 Mass. 212 (1979), we held that while initial construction of the words "other damage to the person" (under similar predecessor versions of the survival statute) maintained the narrow view that only damage of a physical nature was encompassed by the phrase, the statute appropriately could be applied to the tort of intentional infliction of emotional distress. *Id.* at 214-216. Our reasoning in *Harrison* — that the word "person" can

include the mind and emotions, and that an action for intentional infliction of emotional distress necessarily involves severe emotional injury — does not apply here. Although the privacy interests protected by the statute in question are real and significant, they are by their very nature lacking in clear definition and difficult to quantify. It is this ephemeral quality that has undoubtedly led the Legislature to grant statutory minimum damages without any proof of harm. The right of action created by this statute is thus very different from those we held to survive in the absence of specific statutory authorization. See *Sheldone* v. *Marino*, 398 Mass. 817, 819 (1986). This is especially so where no actual damage has been sustained. In such circumstances the plaintiffs' claim cannot be said to be one for "damage to the person" that survives. The allowance of the motion to substitute parties, and the denial of the defendants' motion to dismiss the claims of Mr. Patt, were in error.

We therefore affirm the award of liquidated damages for Mr. Ward against each of the defendants. We reverse the award of punitive damages for both plaintiffs, and reverse the award of liquidated damages for Carol Pine as executrix of Mr. Patt's estate. Finally, we remand to the trial judge on the issue of attorney's fees and costs, for a determination of what costs appropriately should be awarded to the one prevailing party.

*So ordered.*